**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marcos Soto-Mendoza,<br><br>    Petitioner,<br><br>v.<br><br>United States of America,<br><br>    Respondent. | No. CV-16-00791-TUC-CKJ<br><br>**ORDER** |

Pending before the Court is Petitioner Marcos Soto-Mendoza's § 2255 motions. (Docs. 8, 10). The government filed a Response (Docs. 14, 20) and Petitioner a Reply (15, 22).

*1. Factual and Procedural Background*

In April 2013, Petitioner was tried by a jury and convicted of conspiracy to bring five illegal aliens into the United States (Count 1) and illegally bringing each of those five aliens into the United States (Counts 2-6). Petitioner was found not guilty of charges that he was responsible for transporting two illegal aliens to the United States, resulting in their deaths (Counts 7-8). Despite his convictions, Petitioner maintained that he was not the guide for the aliens that had been apprehended.

In Petitioner's presentence report, he was assigned a ten-level enhancement for the deaths of two illegal aliens pursuant to U.S.S.G. § 2L1.1(b)(7)(D). Petitioner's post-trial counsel, Tamara Mulembo, objected to that enhancement claiming that the Supreme Court's ruling in *Burrage v. United States*, 571 U.S. 204 (2014) precluded enhancements

for acquitted conduct. *See* (Doc. 182).¹ At sentencing, the Court overruled Petitioner's objection and applied the ten-level enhancement and sentenced Petitioner to 180 months of incarceration.

Petitioner appealed to the Ninth Circuit Court of Appeals and argued, in part, that the Court improperly enhanced his sentence because he was acquitted of the Counts relating to the deaths of the two aliens and, therefore, the Court could not use them to enhance his sentence. *See* (Doc. 14-1, pg. 77). The Ninth Circuit rejected Petitioner's argument writing:

> Soto-Mendoza argues that the district court violated his Sixth Amendment rights by enhancing his sentence due to the deaths of two aliens where the jury acquitted him of causing these deaths in counts VII and VIII. We do not reach Soto-Mendoza's constitutional claim because the jury did not actually acquit Soto-Mendoza of causing the deaths. The jury instructions listed each element of the crime. The jury did convict Soto-Mendoza of bringing the aliens into the United States. The parties stipulated that the aliens identified in Counts VII and VIII died in the desert and that the autopsies indicated they died of heat-related ailments. There was no clear jury finding regarding Soto-Mendoza's involvement in the deaths and thus there is no basis for Soto-Mendoza's Sixth Amendment claim based on inconsistency.

(Doc. 14-2, pg. 6).

Subsequently, Petitioner filed the pending § 2255 motions alleging that Ms. Mulembo was ineffective "for not taking the position during Petitioners [sic] sentencing that the District Courts [sic] preponderance of the evidence finding was contradictory to the jurys [sic] verdict which produced an absurd result, [sic] that violated both the Fifth and Sixth Amendment rights of Petitioner…." (Doc. 8, pg. 5). Petitioner also filed an amended § 2255 motion alleging ineffective assistance of counsel by his trial counsel, Clay Hernandez. *See* (Doc. 10). More specifically, Petitioner claimed Mr. Hernandez was ineffective because he failed to investigate Petitioner's statements relating to cell phones

---

¹ This refers to Document 182 in Petitioner's underlying criminal case numbered: 4:11-CR-02628-CKJ-BPV.

recovered from two of the illegal aliens he was convicted of transporting and for allegedly failing to follow Petitioner's trial strategy.

*2. Discussion*

Petitioner advances two arguments in his habeas petition, both relating to the alleged ineffective assistance of his trial and post-trial counsel. To establish an ineffective assistance of counsel claim, Petitioner "must demonstrate both: (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense." *Miles v. Ryan*, 713 F.3d 477, 486 (9th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 688-93 (1984)).

    A. *Clay Hernandez*

        i. *Cellular Phones*

In his amended habeas petition, Petitioner alleges that he overheard two of the aliens he entered the United States with, Juan Garcia and Abad Uriostegui, discussing how to minimize the significance of their roles in transporting themselves, Petitioner, and others to the United States. (Doc. 10, pg. 5). Petitioner states that he informed his trial counsel, Clay Hernandez, that obtaining Mr. Garcia and Mr. Uriostegui's cellular phones was crucial in asserting his defense that he was being guided on the journey to the United States and was not the leader of the trip. *Id.*

The government opposes Petitioner's argument and attached an affidavit from Mr. Hernandez to its Reply. (Doc. 21-1). In it, Mr. Hernandez states that Petitioner never directed him to obtain cell phone records from all cellular phones seized from the material witnesses and states that only one cellular phone was seized in this case and was determined to belong to Petitioner. *Id.* That phone was the subject of extensive litigation and was the basis for a Motion for a New Trial filed by Mr. Hernandez after Petitioner was convicted. *Id.* at 4.

Petitioner claims that that he "made it perfectly clear to [Mr. Hernandez] that he needed to get copies of . . . every cellular phone that was found during the arrest of all individuals, in order to investigate who the owners of those phones were and who was

called during the trek from Mexico." *Id.* at 5. Petitioner also claims that "[he] was prejudiced by the fact that no investigation into the link between Uriostegui and Garcia and the phones recovered from their possession was pursued by defense counsel, as the information gained therefrom could have been used to formulate a proper defense strategy . . . ." *Id.* at 7.

More specifically, in Petitioner's Motion for a New Trial, he argues that "the government disclosed evidence of a cellular phone the government believed to be taken from the [Petitioner's] person during his arrest. In particular, the government's disclosure included an evidence 'log sheet' which indicated that a cellular telephone was collected from the [Petitioner] at the scene of the incident." (Doc. 133, pg. 3).[2] At trial, Petitioner testified that he had a cell phone, but that phone "was actually taken from him by Uriostegui . . . before they embarked on their trek through the desert." *Id.* If Mr. Uriostegui was, at one time, in possession of a cell phone, Petitioner's own testimony indicates that the phone was his own phone, the contents of which were thoroughly examined. (Doc. 157, pg. 216-36).[3]

Petitioner's claim is problematic and does not meet the standard for an ineffective assistance of counsel claim established in *Strickland v. Washington*. Not only does Petitioner provide no evidentiary support to establish that either Mr. Uriostegui or Mr. Garcia were in possession of a separate cellular phone, he presupposes that their hypothetical phones would contain exculpatory evidence. *See* (Doc. 10, pg. 7) ("Petitioner was prejudiced by the fact that no investigation into the link between Uriostegui and Garcia and the phones recovered from their possession was pursued by defense counsel . . . ."). *Strickland* requires that Mr. Hernandez's performance be deficient *and* prejudicial. Not only does the record indicate that Mr. Hernandez properly investigated and litigated issues related to the single discovered cellular phone, even if he had not, the phone was examined and there is no indication that it contained any

---

[2] This refers to Document 133 in Petitioner's underlying criminal case numbered: 4:11-CR-02628-CKJ-BPV.
[3] This refers to Document 157 in Petitioner's underlying criminal case numbered: 4:11-CR-02628-CKJ-BPV.

exculpatory evidence. Thus, Petitioner's claim of ineffective assistance of counsel pertaining to cellular phones fails.

## ii. *Legal Strategy*

Petitioner also alleges that during depositions, he directed Mr. Hernandez to ask specific "questions in order to contradict [witnesses'] version of events, and in order to highlight the inconsistencies" in the witnesses' testimony. (Doc. 10, pg. 5). Petitioner states that Mr. Hernandez failed to ask these questions, leading "to a complete breakdown in communication between Mr. Hernandez and [Petitioner]." *Id.* 5-6. The Court notes that Petitioner did not specify in his pleadings what questions he directed Mr. Hernandez to ask. Petitioner claims that as a result of this, he was forced "to move forward to trial unprepared to defend himself properly" and that "[n]o defense was affirmatively put forward." *Id.* at 6. Contrary to Petitioner's allegations, Mr. Hernandez states that, in preparation for trial, "[he] had several discussions with [Petitioner] about the incident which resulted in the indictment he was facing. During these discussions, [Petitioner] stated that he was not the guide for the aliens that had been apprehended and/or found deceased in the desert." (Doc. 20-1, pg. 3). Only Mr. Hernandez's version of events is supported by the record.

During trial, Petitioner's testimony was solely focused around his defense that he was not a guide. *See* (Doc. 138, pg. 66)[4] ("Q: Okay. Marcos, were you ever the guide for these people? A: Never."); *id.* at 104 ("Q: Okay. By this time you know you are the guide of the group, aren't you? You know you're the guide to the group, aren't you? A: No. Q: You had directed Abad, Marcos, Chiapas, Gloria, Juan what to buy, didn't you? A: No, I never spoke to them about anything. Never."); *id.* at 138 (Q: When you agreed to guide this group, how much were you going to get paid to guide this group? A: I was not going to be charging anything. I was going to pay to be -- get guided back to Phoenix.")

Furthermore, in Petitioner's Motion for a new trial, Mr. Hernandez writes:

---

[4] This refers to Document 138 in Petitioner's underlying criminal case numbered: 4:11-CR-02628-CKJ-BPV.

> This lends tremendous credence to the defendant's defense, which was essentially that he was not the guide, but was rather an ordinary migrant who had his cell phone taken from him by the real guides.

(Doc. 133, pg. 7-8).[5]

> The fact that the defendant did not have a cell phone on his person when he was found by Border Patrol seriously undercuts the government's assertion that the defendant was in fact guilty of the crimes charged. It also bolsters the defendant's defense that he was not the guide.

*Id.* at 8.

As is evident, Petitioner put forth a defense specifically denying his leadership role in guiding the group. Petitioner has advanced zero evidence that Mr. Hernandez ignored his requests or failed to properly prepare him for trial. Petitioner has failed to show that Mr. Hernandez's performance was deficient in any way and Petitioner's argument that Mr. Hernandez was ineffective fails.

### iii. *Evidentiary Hearing*

Petitioner alleges that his claims involve "[s]everal issues . . . which at the very least justify an evidentiary hearing." (Doc. 22, pg. 1). Ordinarily, "a hearing is not automatically required on every section 2255 petition. Nonetheless, a hearing is mandatory whenever the record does not affirmatively manifest the factual or legal invalidity of the petitioner's claims." *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982) (internal citations omitted).

Here, Petitioner states that an evidentiary hearing is required because of Mr. Hernandez's alleged failure to obtain records and other evidence in order to demonstrate that Petitioner was not culpable as charged. A hearing is required if Petitioner makes "specific factual allegations which, if true, would entitle him to relief." *Id.* Rather than advance specific factual allegations, Petitioner provides mere conclusory statements that if specific pieces of evidence were recovered, he would be exonerated. However, Petitioner fails to explain why those specific pieces of evidence would exonerate him. For

---
[5] This refers to Document 133 in Petitioner's underlying criminal case numbered: 4:11-CR-02628-CKJ-BPV.

- 6 -

example, Petitioner alleges that he "instructed [Mr.] Hernandez to examine and get copies of the hospital records, and all property seized from anyone arrested relative to this attempt to travel to the USA. This information/evidence would have exonerated Movant." (Doc. 22, pg. 6). Petitioner fails to explain how the hospital records or property seized from those individuals arrested would exonerate him or even what information would be contained within those records.

Similarly, Petitioner alleges that he instructed Mr. Hernandez "to obtain not just the phone [Petitioner] had given [Mr. Uriostegui] – or records of the calls made while in his possession – but the records of all cell phone [sic] seized from parties arrested by the agents." (Doc. 22, pg. 6). Again, Petitioner appears to presuppose the existence of multiple cellular phones without providing any evidence that a cellular phone, other than his own, was recovered during the investigation. The singular cellular phone that was seized was thoroughly inspected, with the phone's contents, including contacts, incoming calls, outgoing calls, text messages, and images being recovered. (Doc. 157, pg. 216-36).[6] Petitioner cannot assert merely conclusory statements as "merely conclusionary statements in a § 2255 motion are not enough to require a hearing . . . ." *Wagner v. United States*, 418 F.2d 618, 621 (9th Cir. 1969). Therefore, Petitioner's request for an evidentiary hearing will be denied.

   *B. Tamara Mulembo*

Petitioner also argues that his post-trial counsel, Tamara Mulembo, rendered ineffective assistance of counsel at sentencing.

In his habeas petition, Petitioner argues:

> Petitioners [sic] counsel was ineffective for not arguing that the jury's verdict and the District Courts [sic] preponderance of the evidence findings was [sic] contridictory [sic] which produced an absurd result, that violated the Fifth and Sixth Amendment Rights of Petitioner.

(Doc. 8-1, pg. 1).

---

[6] This refers to Document 157 in Petitioner's underlying criminal case numbered: 4:11-CR-02628-CKJ-BPV.

Petitioner's argument fails. Contrary to Petitioner's assertion, Ms. Mulembo raised this exact issue in her Reply to Objections to Petitioner's Presentence Report. (Doc. 195).[7] There, she argued that "[t]he jury specifically relieved Mr. Soto-Mendoza of responsibility for the tragic outcome in this case through its not guilty verdicts. To nevertheless hold Mr. Soto-Mendoza responsible violates his right to trial by jury and the Sixth Amendment." *Id.* at 5. This argument was properly made and preserved for appeal. It was later asserted by Petitioner's appellate counsel and was the subject of a significant portion of Petitioner's opening appellate brief. *See* (Doc. 14-1, pg. 77-88).

Therefore, despite Petitioner's assertion that Ms. Mulembo was ineffective for failing to raise an argument pertaining to burdens of proof and Petitioner's Fifth and Sixth Amendment rights, Ms. Mulembo properly raised the argument and the alleged representational error never occurred. *Strickland* requires deficient performance. There was no such deficient performance and Petitioner's argument fails.

Accordingly, IT IS ORDERED:

1. Petitioner's Motions Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody are **denied**. (Docs. 8, 10).
2. A Certificate of Appealability shall not issue in this case.
3. The Clerk of Court shall enter judgment and close its file in this matter.

Dated this 16th day of January, 2020.

Honorable Cindy K. Jorgenson
United States District Judge

---

[7] This refers to Document 195 in Petitioner's underlying criminal case numbered: 4:11-CR-02628-CKJ-BPV.